```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

John F. Novak, at al.,            :

        Plaintiffs,        :    Case No. 2:10-cv-768

   v.                            :    JUDGE MARBLEY

John O. Farneman, et al.,         :

        Defendants.        :


<u>ORDER</u>

    The complaint in this case alleges that plaintiffs own certain technology relating to the conversion of scrap tires to diesel fuel and carbon dust.  It also alleges that defendants were given access to this technology under an agreement that contained language prohibiting its use and disclosure, but that defendants used the information obtained under the agreement to file their own patent application for a device that mimics plaintiffs' device.  It appears to be undisputed that both sides of the dispute are in the process of putting a device into production.

    As part of their initial discovery, plaintiffs asked for information about defendants' device.  Defendants have agreed to produce drawings of the device pursuant to a protective order, and plaintiffs have agreed to accept the drawings as responsive to their request for information.  Only one issue remains: defendants insist that the drawings be limited to an "attorneys' eyes only" review, and that Louis F. Wagner, one of plaintiffs' attorneys, be excluded from that review.  The parties have briefed this issue.  For the following reasons, the Court agrees with defendants that Mr. Wagner should not be among those

attorneys permitted to view defendants' confidential information.

## I. Background

The facts underlying the parties' dispute are fairly straightforward.  According to the declaration of John F. Novak, one of the plaintiffs, Mr. Wagner, an attorney with the firm of Hahn Loeser, has been patent counsel to plaintiff EnviroWave since it was created in 2002.  He is not an employee of that company and is not involved with product research, product development, marketing, pricing, or sales.  He does provide legal representation in connection with patent prosecution.  He has also become very familiar with the product involved in this case, presumably in part to allow him to prosecute the patent.

Although not contained in Mr. Novak's declaration (or, indeed, in any declaration or affidavit), the parties appear to agree that plaintiffs, with the legal assistance of Mr. Wagner, have been pursuing a patent for their device since 2007.  That patent application is still pending, having been rejected several times on grounds of obviousness, and it can still be amended.  There is at least some possibility that information contained in the drawings of defendants' device could find its way into plaintiffs' submissions to the Patent Office.  The "attorneys' eyes only" protection which would restrict the use of that information would prevent Mr. Wagner from using it in connection with his activities as patent counsel, and he stated in a telephone conference that he would abide by such restrictions.  Defendants' concern, however, is that he would be unable to compartmentalize his knowledge in that way, and that if he is given access to the drawings, there is an unacceptable risk that the information will be used to the defendants' detriment in connection with the prosecution of plaintiffs' patent application.  Thus, the issue for the Court is whether this concern justifies precluding Mr. Wagner, who is also one of

plaintiffs' litigation attorneys in this case, from reviewing the information, or whether his value to plaintiffs as the only one of their litigation attorneys who, at this point, has a full understanding of the technological issues in the case, outweighs the risk of harm to defendants.

II. Discussion

The legal standard applicable to this issue is also not in serious dispute.  Often, the issue about which attorneys may see confidential information which is appropriate for an "attorneys eyes only" designation arises in the context of in-house counsel. In that situation, the leading case, U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984), stands for the proposition that unless the party seeking to keep the information out of the hands (or away from the eyes) of the in-house counsel cannot rely solely on the attorney's status, but must make a particularized showing that the attorney is involved in the business activities of the client to such an extent that he or she "would have a difficult time in compartmentalizing [the] knowledge" gained through disclosure.  See United States v. Dentsply Intern., 187 F.R.D. 152, 160 (D. Del. 1999), quoting Motorola, Inc. v. Interdigital Technology Corp., 1994 U.S. Dist. LEXIS 207A, at *10 (D.Del. Dec. 19, 1994).  In U.S. Steel, the pertinent business activities about which the court expressed concern were decisions about pricing, product design, or other matters which were "made in light of similar or corresponding information about a competitor."  U.S. Steel, 730 F.2d at 1468 & n.3.

Much the same logic has been applied to the precise question posed in this case, which is whether an attorney who is not in-house, but who is involved in prosecuting a patent for a device which has some relationship to the confidential information at issue, should be prevented from learning that information.

-3-

Again, the key inquiry is whether the patent prosecutor "is in fact a competitive decision maker." Gen-Probe Inc. v. Becton, Dickinson & Co., 267 F.R.D. 679, 682 (S.D. Cal. 2010) (citing to U.S. Steel). The Gen-Probe court also noted, however, that "[t]he court must also balance the risk of inadvertent disclosure of confidential information to competitors against the risk of impairment of litigation." Id., citing Interactive Coupon Mktg. Group v. H.O.T.! Coupons, LLS, 1999 WL 618969, *1 (N.D. Ill. Aug. 9, 1999).

In a decision applying U.S. Steel, and involving an order permitting outside patent counsel to view confidential information, the Court of Appeals for the Federal Circuit stressed again the need for specific fact-finding, and not generalizations based on the status occupied by counsel, in determining whether to exclude an attorney from viewing confidential information. In re Sibia Neurosciences, Inc., 132 F.3d 50 (Fed. Cir. October 22, 1997) (unpublished). Specifically, the court stated that "denying access to ... outside counsel on the ground that they also prosecute patents ... is the type of generalization counseled against by U.S. Steel." Id. at *3. That decision has not been strictly followed, however, by a large number of courts, most of which have reasoned that an attorney involved in prosecuting patents is, at least with respect to decisions made about what information to use in connection with the patent prosecution, a significant decision-maker, and that there is a great risk of inadvertent disclosure of confidential information if there is a close relationship between that information and the patent being prosecuted. See Methode Electronics v. DPH-DAS LLC, 679 F.Supp. 2d 828, 832-33 (E.D. Mich. 2010).

This Court agrees with and adopts the approach typified by Judge Borman's decision in Methode Electronics, and the reasoning

-4-

of Magistrate Judge Morgan in the order which was adopted by the District Court.  As Judge Morgan explained, an attorney's concession that he was working on either patent applications or involved in re-examination proceedings which concerned exactly the same technology at issue in the litigation was viewed as "evidence of competitive decisions made by him" and, thus there was "good cause to enter the provision barring review ...." Methode Electronics v. Delphi Automotive Systems, L.L.C., 2009 WL 3875980, *4 (E.D. Mich. November 17, 2009), adopted and affirmed 679 F.Supp. 2d 828 (E.D. Mich. 2010).  Such an order was needed to prevent "the inadvertent or accidental disclosure of the information disclosed in this litigation in the context of prosecuting a patent" and "the inadvertent or unconscious use of such information in fashioning patents and arguments before the Patent Office."  Id. at *5.  The idea that such work is not competitive decision-making simply because it is distinct from designing, developing or marketing products was squarely rejected as "not consistent with court rulings" holding that patent prosecution work is, indeed, one form of such decision-making. Id.

     Here, unlike the situation in Methode Electronics, the Court has not had the opportunity, due to the need to decide this matter on an accelerated basis, to have a hearing and take testimony on the scope of Mr. Wagner's patent prosecution responsibilities.  Thus, the factual record is somewhat sparse.  However, it is complete enough for the Court to understand that Mr. Wagner is not simply plaintiffs' patent attorney and that defendants' efforts to shield their information from his view is not based on broad generalizations about the potential for him to use that information to their competitive detriment.  Rather, it appears undisputed that he is currently working on a patent prosecution involving the exact same device which is at issue in

this case, which the plaintiffs have accused the defendants of copying, and which both parties are seeking to market in the immediate future.  Further, that patent application is still pending and plaintiffs have been seeking, and apparently will continue to seek, to address the concerns of the Patent Office about whether the device is obvious in light of prior art.  Given the very specific relationship of Mr. Wagner's patent work to the product involved in the litigation, the Court agrees with defendants that the risk to them of inadvertent or unconscious use of their highly sensitive information is simply too great not to restrict its disclosure to attorneys who are not intimately involved in the patent proceedings.

     This conclusion does not completely answer the parties' question, however.  The need to prevent patent counsel from seeing this type of information can be overcome by a showing of exceptional hardship - that is, the Court must, as stated in <u>Gen-Probe</u>, balance the risk to defendants of inadvertent disclosure against the impact that the protective order will have on plaintiffs' ability to prosecute their claims.  The Court believes that plaintiffs carry the burden of making a showing of that type of hardship, and that they have not met that burden here.  First, they have not demonstrated that the technology involved - or the level of technological knowledge needed for an attorney to advocate their position on whether defendants are making use of the information they learned while under a contractual duty not to use or disclose it - is so complicated as to be beyond the ability of a reasonably competent litigator to grasp.  Second, to some extent, any hardship which exists here is of plaintiffs' own making.  They were undoubtedly aware that an issue about Mr. Wagner's access to defendants' confidential information would arise, and the complaint indicates that they have suspected for some time that defendants were misusing their

technology and that litigation might be likely.  Presumably, they did a reasonable amount of pre-suit investigation prior to filing their complaint on August 13, 2010, and could have gotten other counsel with patent or technological expertise involved during that process to guard against the possibility that Mr. Wagner would be prohibited from full participation in the case.  The case has now been pending for almost a month.  There has been ample time for plaintiffs to have taken steps to reduce or eliminate any hardship caused by this ruling.  That being so, the Court cannot find that such hardship, if any, outweighs the potential competitive injury to defendants, and it will enter the protective order defendants seek.

### III.  Order

Based on the foregoing analysis, the Court denies plaintiffs' motion to compel production (#24) to the extent that it seeks an order permitting attorney Louis F. Wagner to view the information which defendants have agreed to produce under an "attorneys' eyes only" designation.

### IV.  Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge

or District Judge.   S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge