**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOHN F. NOVAK, et al.,** : | |
| : | |
| Plaintiffs, : | Case No. 2:10-CV-768 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| **JOHN O. FARNEMAN, et al.,** : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs John F. Novak et al.'s Motion for Preliminary Injunction (Doc 22). Novak seeks a preliminary injunction prohibiting Defendants John O. Farneman, et al. from: (1) further misappropriating, disclosing, or using trade secrets and confidential information, including information about Mr. Novak's Technology, that Farneman and Welch accessed under certain Non-Disclosure Agreements with Mr. Novak; (2) attempting to commercialize, transfer, convey, encumber, sell, lease, export, assign and/or license the Technology to any third party, including restraining any further so-called "research and development" efforts by Farneman and Keith L. Welch using the Technology. Plaintiffs also request that a constructive trust be imposed over the Patent Application filed by Farneman and Welch that incorporates Mr. Novak's trade secrets and Technology, and they request the appointment of Mr. Novak as the trustee over that constructive trust. For the reasons set forth below, Plaintiffs' Motion is **DENIED**.

## II. BACKGROUND

Plaintiff John F. Novak owns a small green technology company, EnviroWave Energy, LLC ("EnviroWave") in Frederkicktown, Ohio. Novak and EnviroWave have developed an environmental technology ("the Technology") that converts scrap tires to diesel fuel and carbon dust without the use of heat. Novak filed a patent application regarding the Technology in February 2006.

Defendant Keith L. Welch worked as a sales representative for EnviroWave beginning in 2000. When he was hired, Welch signed a non-disclosure agreement ("NDA"), under which he was provided confidential trade secret information about the Technology. Sometime in 2004, Welch introduced Novak to Defendant John O. Farneman, indicating that Farneman was an investor in another company that may be interested in acquiring a system incorporating the Technology. Farneman signed an NDA, and thereafter was given access to confidential trade secrets regarding the Technology.[1] After reviewing the confidential information, Defendants decided that they wanted to purchase the Technology from Novak.

In February 2006, Novak had major surgery for a life-threatening aneurism. While Novak was at home on bed rest, heavily medicated, Welch came to Novak's home on multiple occasions, attempting to pressure Novak into selling the Technology.[2] Novak's wife intervened, and Welch relented. Defendants have not contacted Novak since December 2006.

---

[1] Plaintiffs indicate that Farneman was given access to, among other things, schematics, drawings, computer aided design ("CAD") drawings, and bills of material.

[2] Plaintiffs allege that the terms of Welch's offers were commercially unreasonable.

In May 2010, Plaintiffs learned that Defendants filed their own patent application in December 2006. Plaintiffs allege that Defendants' patent application contains trade secrets and confidential information provided to Defendants under the NDAs[3] they signed. Plaintiffs are currently reviewing the application. Thus far, they have found dozens of instances of copying, plagiarism, and quoting without attribution from the trade secrets Plaintiffs provided them.[4] Defendants' patent application discloses confidential information that was not revealed in Plaintiffs' patent application. Plaintiffs now fear that Defendants are trying to sell the Technology. Novak has received calls and emails inquiring whether he needs certain services to sell a system incorporating the Technology. Plaintiffs also allege that Defendants have filed European foreign patent applications addressing the Technology.

On August 13, 2010, Delaware County Court of Common Pleas Judge W. Duncan Whitney entered a temporary restraining order, prohibiting Defendants from: (1) further misappropriating, disclosing, or using trade secrets and confidential information, including information about Plaintiffs' Technology, that Defendants accessed under certain NDAs with EnviroWave; and (2) attempting to transfer, convey, encumber, sell, lease, export, assign, and/or license the Technology to any third party. That temporary restraining order expired on Friday, August 27, 2010.

On August 25, 2010, Defendants removed the case to this Court. On August 26, 2010, Plaintiffs filed the instant Motion for a Temporary Restraining Order, asking the Court to renew

---

[3] Plaintiffs are currently unable to locate copies of the NDAs signed by Defendants.

[4] Plaintiffs allege that typographical errors contained in original confidential documents are also contained in Defendants' patent application, indicating copying and pasting from the documents to the application.

Judge Duncan's previous TRO. That day, the Court ordered that the original TRO be kept in place until August 30, 2010, at which point the Court would be available to hold a Rule 65.1 status conference.

A Rule 65.1 status conference was held on August 30, 2010. At that time, the Court granted Plaintiffs' Motion for a Temporary Restraining Order, and issued an Opinion restraining Defendants John O. Farneman, Keith L. Welch and Micro Recovery Solutions, LLC from: (1) further misappropriating, disclosing, or using trade secrets and confidential information, including information about Plaintiffs' Technology, that Defendants accessed under certain Non-Disclosure Agreements ("NDAs") with EnviroWave; (2) attempting to transfer, convey, encumber, sell lease, export, assign, and/or license the Technology to any third party; and (3) using any confidential information accessed under the NDAs in their continued Research and Development ("R&D") efforts. Defendants are permitted to continue their R&D efforts to the extent that they are able to do so without the use of the confidential information accessed under the NDAs. This Motion for Preliminary Injunction Followed.

### III. LAW & ANALYSIS

Plaintiffs seek a preliminary injunction prohibiting Defendants from continuing to use alleged trade secrets learned as a result of working with Plaintiffs. A preliminary injunction is a remedy used by the court to preserve the status quo between the parties pending a trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A court will generally issue a preliminary injunction when the plaintiff establishes that: (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) the plaintiff will suffer irreparable injury without the

injunction; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the injunction serves the public interest.  *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

## A. LIKELIHOOD OF SUCCESS ON THE MERITS

### 1. Trade Secrets Claim

Novak's first claim arises under the Ohio Uniform Trade Secrets Act ("the Act").  Under the Act, "actual or threatened misappropriation" of trade secrets "may be enjoined."  O.R.C. § 1333.62.  The Act defines "trade secret" as:

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.R.C. § 1333.61(D).  To successfully assert a trade secret misappropriation claim, a plaintiff must establish, by a preponderance of the evidence: "(1) 'that a trade secret exists,' (2) 'that the trade secret was acquired as a result of a confidential relationship,' and (3) that it was acquired 'as a result of the unauthorized use of a trade secret."  *ALTA Analytics, Inc. v. Muuss*, 75 F.Supp.2d 773, 785 (S.D. Ohio 1999) (quoting *Penetone Corp. v. Palchem Inc.*, 627 F.Supp. 997, 1005 (N.D. Ohio 1985)).

In evaluating whether a party possesses a trade secret, Ohio courts look to:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e. by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended

>  in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Besser v. Ohio State Univ.*, 732 N.E.2d 373, 378 (Ohio 2000). Plaintiffs bear "the burden to identify and demonstrate that the [alleged trade secret] is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *Id*.

Information "is entitled to trade secret status only if the information is not generally known or readily ascertainable to the public." *Id*. at 379. Disclosure of information to outside parties and the existence of security policies to safeguard the information impact the Court's determination as to whether trade secret protection is warranted. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F.Supp.2d 853, 863 (S.D. Ohio 2008) ("Whether [the plaintiff] in fact had security policies in place to limit access to the show drawings or disclosed the shop drawings to outside parties is a question of fact that . . . raises a question as to whether the shop drawings constitute 'trade secrets' under [the statute]."); *see also Richter v. Westab, Inc.*, 529 F.2d 896, 900 (6th Cir. 1976) ("This conclusion is even more compelling because Richter & Mracky is asking for compensation to cover periods when fashion binders were widely sold on the market by Westab's competitors as well as by Westab. Even if Westab had been paying Richter & Mracky to use the concept, *it would have ceased being a trade secret upon introduction of the products*, and Richter & Mracky thereafter would have no legal right to the concept." (emphasis added)); *Prosonic Corp. v. Stafford*, 539 F.Supp.2d 999, 1005 (S.D. Ohio 2008) ("Prosonic took substantial security measures to keep this information private, including the limited security clearances within the Prosonic personnel ranks for access to such information."). The existence of non-disclosure agreements also weighs on this determination. *Alta Analytics*, 75 F.Supp.2d at

785 ("Besides confidentiality agreements with its employees, Plaintiff regularly engages in such agreements with potential customers upon receipt of trial software.").

While individual pieces of information available in the public domain do not qualify as trade secrets, "a new combination of known steps or processes can be entitled to trade-secret protection." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 411 (6th Cir. 2006); *see also Giasson Aerospace Sci. v. RCO Eng'g, Inc.*, 680 F.Supp.2d 830, (E.D. Mich. 2010) ("'[A] trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'" (quoting *3M v. Pribyl*, 259 F.3d 857, 596-97 (7th Cir. 2001))). This holds true even if some of the information is available in patent applications, so long as the entire trade secret is not revealed in the application. *See Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702, 713 (N.D. Ohio 2009) ("[W]hile, as a general proposition, there is no trade-secret protection for secrets that are disclosed in a patent application, numerous courts have allowed trade-secret protection for processes or specifications related to the patented device that are not disclosed in the patent.").

The parties disagree as to the measures Novak took to protect his alleged trade secrets. Novak asserts that Defendants Farneman and Welch both signed non-disclosure agreements. He also alleges that all of his potential customers, including the City of Zanesville and its consultant DLZ, had to sign such agreements, along with all employees, customers, vendors, Novak's son, and his housekeeper. Unfortunately, he has been unable to produce agreements signed by Welch or Farneman; in fact, he informed the Court that he is unable to locate *any* of the approximately

fifty non-disclosure agreements he alleges were signed by various people.[5]  Steve Doane, a former employee of Novak's, testified that he witnessed Welch sign a document, allegedly an NDA, in 2001.  On cross-examination, however, he acknowledged that he did not actually read the document he saw Welch sign.  Novak has provided the Court with blank copies of the agreements he alleges were executed.

      Defendants, in contrast, dispute the existence of any non-disclosure agreements.  Welch has produced a "Manufacturer's Representative Agreement" ("MRA"), which he contends is the only agreement he ever entered into with Novak.  The MRA does not contain any non-disclosure or confidentiality provisions.  Welch and Farneman both testified that they never signed an NDA with EnviroWave, and that they never saw anyone else sign an NDA[6].  Defendants also argue that none of the alleged trade secrets is entitled to protection because Novak disclosed the information to third parties through marketing materials and publication on EnviroWave's website.  Welch testified that he shared much, if not all, of the allegedly protected information with potential customers, and that he did so without ever requiring anyone to sign an NDA or any other type of confidentiality agreement.  Defendants provided the Court with a copy of marketing materials given to a contractor, and the materials contained much of the allegedly

---

      [5]Novak states that he searched for the folder containing the agreements for five days, and was unable to find them.  He alleges that Welch removed the folder, but he produces no evidence to support that allegation.  In fact, at the hearing, Novak testified that Welch did not have keys to his home (where his office is located) or to any of his locked file drawers.

      [6]Welch did sign an NDA with JANESCO, Novak's former company.  His relationship with JANESCO, however, is not connected to his relationship with EnviroWave or the alleged trade secrets in this case.

confidential information.  Novak conceded that he thought Welch may have shared some of the confidential information with others.

The alleged misappropriation of trade secrets involves the apparent copying and pasting of text from Novak's confidential binders to Defendants' provisional patent application.  Novak estimates that approximately 70% of the patent application is actually plagiarized from his confidential binders.  Novak has pointed the Court's attention to blocks of text within the patent application that are identical to blocks of text found in his documents, which are marked "confidential," and were allegedly given to Welch pursuant to a now unavailable nondisclosure agreement.[7]  Defendants do not dispute the similarities between Novak's language and the language contained in the patent application.  Rather, they contend that the information was freely available from other sources, and that Novak himself disclosed the alleged trade secrets to customers without requiring that they sign nondisclosure agreements.  Additionally, Defendants allege that the information appeared on Novak's website, freely available to the public.

Plaintiffs also contend that Defendants' provisional patent application contains a cropped version of a picture provided by Novak to Welch by way of a confidential memo.  A diagram entitled "Typical Tire Plant – Block Diagram" appears on page 7 of a memo sent from Novak to

---

[7]Indeed, even typographical errors contained in the confidential documents appear in the provisional patent application.  A table documenting various compounds appears both in the confidential documents and in the patent application, and the same typographical errors appear in both versions of the table.  While this table may be widely available in chemistry textbooks, as Defendants contend, it is clear that Defendants did not get the table from a chemistry textbook; they got it from Novak's confidential documents.  *See Vitro Corp. Of Am. v. Hall Chem. Co.*, 254 F.2d 787, 793 (6th Cir. 1958) ("It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product.  The fact is that they did not.  Instead they gained it from plaintiffs via their confidential relationship . . . .").

Welch on September 23, 2001. A similar, though modified, version of the same diagram appears as an attachment to Welch's provisional patent application. The diagrams are structurally identical; the only modification to the patent application diagram seems to be the removal of certain labels and units of measure throughout the diagram. In other words, Defendants added nothing to the diagram; they only removed information that Novak had provided on his diagram. This type of "modification" is insufficient to convince the Court that Defendants' diagram is not merely a cropped version of Novak's diagram.[8] Defendants do not allege that this diagram was created by someone other than Novak, or that it was readily available from other sources.

The Court is convinced that Defendants obtained the intellectual property at issue in the case not from any third party sources, but directly from Plaintiff's materials. The Court finds, however, that Novak took inadequate measures to protect the allegedly confidential information. Plaintiff has the burden of establishing that trade secrets exist, and that he took adequate measures to protect those secrets. Because Plaintiff has not established that he required anyone to sign confidentiality agreements before granting them access to his allegedly confidential information, because he acknowledged that he knew or at least believed that Welch was sharing the confidential information with others, and because he allowed disclosure of the information to potential customers without any confidentiality agreements, Novak has not proven that he adequately protected his intellectual property in order to be afforded trade secret protection. As a result, he has not established a likelihood of success on the merits of his misappropriation of trade secrets claim.

---

[8] Defendants also contend that the diagram is not a trade secret because it was disclosed to customers, without any confidentiality requirement, as early as 2002.

### 2. Unfair Competition Claim

Novak's unfair competition claim is preempted by Ohio's Uniform Trade Secrets Act, Ohio Revised Code Section 1333.67.  *See Unique Paving Materials Corp. v. Fargnoli*, 361 F.App'x 689, 690 (6th Cir. 2010) (affirming district court's dismissal of unfair competition claim because it was preempted by Uniform Trade Secrets Act).  As a result, Novak cannot establish a likelihood of success on the merits of this claim.

### B. IRREPARABLE INJURY

In the Sixth Circuit, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  More specifically, "[i]rreparable harm generally results from misappropriation of intellectual property by a competitor because of the potential for lasting and unjust competitive harm that would otherwise not occur."  *Ethicon Endo-Surgery v. Crescendo Techs.*, 2009 WL 2707805, at *6 (S.D. Ohio 2009) (citing *Acumed, LLLC v. Stryker Corp.*, 551 F.3d 1323, 1328-29 (Fed. Cir. 2008) and *Bio-Tech. Gen. Co. V. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996)).  In addition, "'[t]he existence of an actual threat of irreparable injury may be established by showing that the employee possessed knowledge of the employer's trade secrets.'"  *Hoover Transp. Servs., Inc. v. Frye*, 77 F.App'x. 776, 785 (6th Cir. 2003) (quoting *Levine v. Beckman*, 548 N.E.2d 267, 271 (Ohio App. 1988)).  Other circuits have held that "the loss of trade secrets cannot be measured in money damages," because, "[a] trade secret once lost is, of course, lost forever."  *FMC Corp. v.*

*Taiwan Tainan Giant Indus. Co., Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984). Irreparable harm also results from "the loss of customer goodwill . . . because the damages flowing from such losses are difficult to compute." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).

Because Novak has not established a likelihood of success on the merits on either of his claims, the Court need not address irreparable injury.

### C. HARM TO THIRD PARTIES

In evaluating the harm to third parties, the Court must "balance the harm a plaintiff would suffer if its request for a preliminary injunction [were] denied with the harm the defendants would suffer if they were to be preliminarily enjoined." *Corporate Exp. Office Prods. v. Warren*, 2002 WL 190902, at *27 (W.D. Tenn. 2002).

Here, the potential harm to Defendants in granting the preliminary injunction would be that they would be unable to complete their current efforts at building and producing the product they are currently developing. If, however, they are utilizing Plaintiffs' trade secrets in that development, they have no right to continue developing it. Because Novak has failed to establish a likelihood of success on the merits of either of his claims, the Court finds that the potential harm to Defendants in granting the injunction outweighs the harm to Novak in denying the injunction. This factor, therefore, weighs against granting the preliminary injunction.

### D. PUBLIC INTEREST

There is no doubt that "the public has an interest in discouraging unfair trade practices." *Hoover Transp. Servs., Inc. v. Frye*, 77 F.App'x 776, 785 (6th Cir. 2003). Defendants contend that the issuance of an injunction here would stifle fair competition and harm the public by

-12-

preventing them from producing an environmentally friendly product.  Because Novak failed adequately to protect his alleged trade secrets, the Court finds that the public interest in encouraging competition weighs against granting injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is **DENIED.**

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: November 9, 2010**