IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN F. NOVAK, et al., | : |
| Plaintiffs, | : Case No. 2:10-CV-768 |
| v. | : JUDGE ALGENON L. MARBLEY |
| JOHN O. FARNEMAN, et al., | : |
| Defendants. | : |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Recuse and for an Evidentiary Hearing. (Doc. 94, *filed under seal*). For the reasons set forth below, the Court hereby recuses itself from presiding over this matter any further. Plaintiffs' Motion to Recuse and for an Evidentiary Hearing is **GRANTED**. All further matters related to this action will be set for immediate referral to a different court.

### II. BACKGROUND

Plaintiff John F. Novak, who owns a small green technology company, EnviroWave Energy, LLC ("EnviroWave") in Frederkicktown, Ohio, developed an environmental technology ("the Technology") that converts scrap tires to diesel fuel and carbon dust without the use of heat. Novak filed a patent application regarding the Technology in February 2006. Novak contends that Defendants Keith L. Welch, who worked as a sales representative for EnviroWave beginning in 2000, and John O. Farneman, an "investor" who expressed interest in potentially acquiring the Technology in 2004, signed non-disclosure agreements ("NDAs") under which they were provided confidential trade secret information about the Technology. Plaintiffs further

contend that because Novak repeatedly refused to sell Defendants the Technology, the Defendants then misappropriated trade secrets and confidential information pertaining to the Technology for incorporation into their own system in violation of the NDAs.

In May 2010, Plaintiffs learned that Defendants filed their own patent application in December 2006. Plaintiffs allege that Defendants' patent application contains trade secrets and confidential information provided to Defendants under the NDAs[1] they signed. Defendants' patent application discloses confidential information that was not revealed in Plaintiffs' patent application. Plaintiffs now fear that Defendants are trying to sell the Technology.

On August 25, 2010, Defendants removed the case to this Court from the Delaware County Court of Common Pleas. On November 9, 2010, after having previously extended the state court's temporary restraining order prohibiting Defendants from further misappropriating, disclosing, or using trade secrets and confidential information; and from attempting to transfer, convey, encumber, sell, lease, export, assign, and/or license the Technology to any third party, this Court denied Plaintiffs' request for a preliminary injunction.

On June 27, 2011, at the request of the parties, this Court presided as the mediator over the parties' first settlement conference in chambers. At this first settlement conference, a settlement was reached by the parties, and the material terms of the agreement were placed on the record. The parties were then ordered to work together to memorialize the settlement agreement in writing and prepare the appropriate dismissal papers. (Doc. 80, 4:6-24).

Among the individuals present on behalf of the Defendants at the settlement conference was Mr. Edward Bacome, who holds a financial interest in Defendants' company. This Court disclosed to all parties that he is an acquaintance of Mr. Bacome and that his wife was an

---

[1] Plaintiffs are currently unable to locate copies of the NDAs signed by Defendants.

-3-

associate at the Vorys firm at which this Judge was a partner.  Although this judge expressed a firm belief in his ability to remain fair and impartial as mediator, parties were given the option of ceasing the settlement conference or seeking the assistance of another mediator.  Both parties elected to proceed, with neither party raising any objections to the mediation going forward, or to the Court's participation in the mediation.

Following the June 27, 2011 settlement conference, however, the parties could not agree on the scope of certain terms of the agreement, and a further status conference was held with the Court on August 25, 2011, to attempt to resolve the outstanding disputed details.  This second settlement conference, too, was unsuccessful.  At the conclusion of the second settlement conference, the Court indicated that it would entertain the Defendants' proposed motion to enforce the original settlement.  Only then did Plaintiffs announce their intention to move for the Court's recusal.  Plaintiffs' instant motion followed in the form of a cross motion to Defendants' motion to enforce the original settlement reached in June.

### III. LAW & ANALYSIS

Plaintiffs' request for the Court's recusal is predicated on two bases, both of which are lacking in merit, and the second of which rests on a fabricated account of the Court's statements during settlement proceedings.

First, Plaintiffs argue that the Court should recuse itself from making a determination on whether to enforce a settlement agreement that it was actively involved in facilitating.  Second, Plaintiffs assert that the Court's relationship with the Bacome family prevents it from maintaining impartiality.  Plaintiffs claim that this Court expressed "sympathy" for Mr. Bacome during the settlement conference because Mr. Bacome was facing a potential financial loss in the

event of an unfavorable outcome for the Defendants. The Court now takes this opportunity to address these arguments and factual contentions.

### A. The Court's Involvement in the Settlement Agreement

The district judge has an initial and abiding responsibility to recuse himself from a case. Under the 28 U.S.C. § 455(a), a judge must recuse himself in circumstances that give rise to a reasonable inference of impropriety or lack of impartiality. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 849 (1988). This broad and objective standard "is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case." *Barksdale v. Emerick*, 853 F.2d 1359, 1360 (6th Cir. 1988); *see also Liteky v. United States,* 510 U.S. 540, 548 (1994).

The Court first treats Plaintiffs' argument that the Court cannot fairly and impartially continue to preside over the breakdown of a settlement which it had assisted in brokering. Plaintiffs rely on a District of Columbia case, *Black v. Kenig*, 227 F. Supp. 2d 153 (D.D.C. 2002), where the magistrate judge felt compelled to recuse himself (although he reported it was a "close call") from being called on to interpret the terms of a contract he had mediated, and where he could have conceivably been called as a witness. The more appropriate controlling authority, however, comes from the Sixth Circuit's opinion in *Bosley v. 21 WFMJ TV*, *Inc.*, 245 F.App'x. 445 (6th Cir. 2007), which expressly distinguished *Black* in upholding the district court's decision not to recuse itself in a strikingly similar situation to the one presented here.

In *Bosley*, as here, the defendants argued that the district judge should have recused himself from continuing to preside over the case, which included ruling on a motion to enforce the prior settlement, because the district judge "was responsible for helping facilitate the

agreement that resulted in the settlement of that case" and therefore had "somehow become invested" in "vindicating" the outcome of the prior settlement. *Bosley*, 245 Fed. App'x. at 453. The Circuit Court explained that, absent any display of "deep-seated favoritism or antagonism," the parties were by no means necessarily denied an impartial hearing simply because the district court chose to preside over the case in which it had mediated a prior settlement that now required review. *See Bosley*, 245 F.App'x at 455 ("[T]he Supreme Court has recognized that judges may properly form opinions 'on the basis of facts introduced or events occurring in the course of the current proceedings.'") (quoting *Liteky*, 520 U.S. at 555).

The argument that a Court cannot impartially determine whether to enforce a settlement it helped to mediate was wrong in *Bosley* and it is wrong here. This Court is perfectly capable of impartially ruling on the issues and terms surrounding the parties' settlement despite having acted as mediator, for judges "are often called upon to compartmentalize their knowledge of information surrounding a case." *United States v. Glick*, 946 F.2d 335, 337 (4th Cir. 1991); *see also Day v. NLO*, 864 F. Supp. 40, 43 (S.D. Ohio 1994) (disagreeing with the idea that a "trial judge who has participated in settlement negotiations is necessarily incapable of reviewing that settlement" but recusing himself from Rule 23(e) fairness proceeding "out of an abundance of caution"). And, *Bosley* makes it clear that recusal is certainly not "required" under 28 U.S.C. § 455, as Plaintiffs assert.

### B. The Judge's Acquaintance with Mr. and Mrs. Bacome

Next, Plaintiffs seize upon the Court's acquaintance with Mr. Bacome and his wife as a second supporting factor in their argument for recusal. Of course, the existence of a "personal bias or prejudice" on the part of the presiding judge concerning one of the parties will trigger the judge's duty to recuse himself. *See* 28 U.S.C. § 455(b). However, common sense, as well as

Supreme Court precedent, instructs that "the pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable." *Liteky,* 510 U.S. at 552.

This Judge disclosed his prior acquaintance with Mr. Bacome at the outset of settlement proceedings, and assured parties that he was confident in the Court's ability to remain fair and impartial nonetheless. This Judge, like "every judge," "comes to the bench with a life-time of background experiences, a roster of associations, and a myriad of views. This past history, in and of itself, is seldom sufficient to require recusal." *Blackwell v. United States,* Case No. 2:08-cv-168, 2008 U.S. Dist. LEXIS 33738, at *5 (S.D. Ohio 2008) (quoting *Scott v. Metropolitan Health Corp.*, 234 F.App'x. 341, 358 (6th Cir. 2007)).

Perhaps out of an understanding that "mere acquaintance is typically not sufficient to warrant recusal," *Blackwell*, 2008 U.S. Dist. LEXIS 33738 at *4, counsel for Plaintiffs attests in his declaration that the Court made additional comments during settlement negotiations revealing a clear bias in favor of Defendants. Specifically, Mr. Wagner claims that this Judge identified Mr. Bacome's wife as a former mentor of his during his time as a partner at the Vorys, Sater, Seymour & Pease law firm, and that he was troubled that Mr. Bacome would have to pay for mistakes of the past. (Declaration of L. Wagner, ¶ 7). At best, counsel was apparently too hurried in preparing a self-serving sworn declaration to correct for demonstrably false representations. At worst, Mr. Wagner made intentional misrepresentations.

First, with respect to the mentor relationship Mr. Wagner claims, the facts belie his declaration. This Judge was on the hiring committee which hired Mrs. Bacome, and it was she who worked with him on occasion as she was an associate in the litigation group in which this Judge was a partner. Mrs. Bacome is significantly this Judge's junior, and during the short time

-6-

they worked together at the firm, Vorys was not in the practice of having junior associates mentor partners.  Indeed, Mrs. Bacome never mentored this Judge.

The contention that this Judge expressed his "sadness" at Mr. Bacome's having to pay for mistakes made by Defendants is equally untrue, and absurd.  This Court remarked that if the case did not settle, then the parties would have to pay mounting legal fees for ongoing discovery, trial preparation, the trial itself, and any appeal.  At no time did the Court single out Mr. Bacome.  As with Mr. Wagner's contention regarding Mrs. Bacome's mentor relationship to this Judge, Mr. Wagner is once again incorrect on the facts.

The defendants in *Bosley* similarly attempted to bolster the evidence of the Court's bias by asserting that Judge Gwin had made certain inappropriate comments to the magistrate judge prior to the hearing on the motion to enforce the settlement, essentially instructing the magistrate judge how to rule.[2]  Although Judge Gwin denied making any comments directing a result, he freely acknowledged his indicating to the magistrate certain points about the merits of the case. *See Bosley*, 245 F.App'x at 455.  Here, the Court's statements in the presence of parties during settlement were even more benign.  The Court merely commented on the obvious fact that a failure to settle would only create more legal costs for all parties.  That Mr. Wagner would make such reckless and patently incredible mischaracterizations of the Court's statements in a sworn declaration strains this Court's credulity.

There being no objective threat to impartiality raised by the Court continuing to preside over the disputes regarding the settlement that it oversaw as mediator, and likewise no

---

[2] "According to defendants' declarations filed with the district court, Judge Limbert disclosed to the parties that Judge Gwin had instructed him to find that the parties had agreed to settle their dispute under certain terms and that the evidentiary hearing requested by defendants would be of little consequence. Moreover, defendants stated that Judge Limbert informed them that Judge Gwin would not set the matter for trial or otherwise disturb his prior dismissal order because he had determined that the parties' dispute was settled." *Bosley*, 245 F.App'x at 454.

objectively inappropriate bias arising from this Judge's acquaintance with the Bacome family, recusal in this case is most certainly not required.  Nevertheless, while the Court's belief in its ability to be fair and impartial in this case remains unshaken by Plaintiffs' arguments and Plaintiffs' counsel Wagner's factual inaccuracies, it is the public's trust and perception of this Court with which the Court must concern itself.  The Court therefore hereby recuses itself in this matter, strictly to avoid even the remote possibility that the further proceedings might be tainted with a suggestion of bias or impropriety.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Recusal and for an Evidentiary Hearing is **GRANTED**.

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 30, 2011**